IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| 1. CHANDA ROBERSON, parent and next friend of **A. N.** | ) ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Civil Action No.: 22-cv-151-KEW |
| 1. ARDMORE PUBLIC SCHOOLS, Independent District, I-19 | ) ) ) ) | **JURY TRIAL DEMANDED** **Attorney's Lien Claimed** |
| Defendant. | ) | |

## VERIFIED COMPLAINT

COMES NOW the Plaintiff, Chanda Roberson, parent and next friend of her daughter, a minor child, (hereinafter "Plaintiff" or "A.N."), by and through her attorney CONRADY LAW, PLLC, by James A. Conrady, and for her Complaint against Ardmore Public Schools states as follows:

### PARTIES

1. The minor child (hereinafter "Plaintiff" or "A. N.") at the time of the allegations contained herein was 13 years of age and attending the 8th grade in Ardmore Public Schools. A. N. was injured during a school-sponsored extra-curricular cheerleading practice event, and was terminated from both the softball team and the cheerleading team.

2. Defendant is Ardmore Public Schools, Independent District, I-19 (hereinafter "Defendant" or "School"), which is a political subdivision located in Carter County, Oklahoma.

## JURISDICTION AND VENUE

3. This action arises under the laws of the United States, particularly under Section 504 of the 1973 Rehabilitation Act and the Americans with Disabilities Act (as amended in 2008), and under Rule 57 (Declaratory Judgment) and Rule 65 (Injunctions and Restraining Orders) of the Federal Rules of Civil Procedures, as well as applicable Common and State laws including the Oklahoma Governmental Tort Claims Act, 51 O.S. § 151, et. seq.

4. This Honorable Court has jurisdiction under 28 U.S.C. § 1331 and has supplemental jurisdiction pursuant to 28 U.S.C. § 1367, in that the claims are interrelated and arise out of the same facts, conduct and occurrences.

5. Venue is proper before this Court pursuant to 28 U.S.C. § 1391 in that all Defendants reside within the State of Oklahoma and live in this District. All of the events and actions by the Defendant giving rise to Plaintiff's claims arose within this District.

## FACTUAL ALLEGATIONS

6. A. N. attended Ardmore Public Schools in the 7th grade in the 2020-2021 school year. During that year, A. N. played on the softball team and was on the cheerleading squad.

7. A. N. has been participating in the extracurricular activity of cheerleading since she was approximately three (3) years of age. A. N. at the time of the causes of action arose was thirteen (13). A. N. has also participated in softball for a number of years. Both activities are very important to her.

8. A. N. was Lead Hitter on the girls softball team and Team Captain of the Cheerleading Squad during the 2020-2021 school year. The cheerleading squad in the past has been guest cheerleaders at games for the Dallas Cowboys Football Team and for the Oklahoma City Thunder Basketball Team.

9. On or about February 19, 2021, A. N. was injured in a school-sponsored cheerleading practice at 515 Maxwell, Ardmore, OK 73401, which was a non-District owned building. The practice took place under the direction and supervision of then-Coach, Brittany Martinez.

10. Coach Martinez instructed A. N. to perform the Arial role in a competitive stunt known as a **"SHOW AND GO."** The Base consists of four people who are to provide stability and safety for the Arial participant, while the stunt is orchestrated on a count of eight (8) with the Arial person being raised over the heads of the Base.

11. Unfortunately, the four Base personnel were new, inexperienced and were improperly trained by Coach Martinez. During the execution of the stunt, one or more of the members of the Base lost her / their balance and stability of the proper grip on the foot and ankle of A. N. . This caused A. N. to fall head first to the floor, which was only partially covered with a protective floor mat.

12. The Coach failed to properly train the four (4) new Base personnel, and also failed to properly supervise the stunt or be in close enough proximity to render assistance or aid under the circumstances and during the fall.

13. The fall caused severe injury to A. N. 's left elbow. A. N. has received two

(2) corrective orthopedic surgeries to date. Medical treatment, physical therapy and medical expenses are continuing. A. N. continues to suffer pain and permanent disability to her elbow due to reduced extension and flexion, emotional distress and diagnosed PTSD.

14. Prior to the beginning of the 2021-2022 school year, and after 6 months from her insuries, A. N. was released by her physician to participate in group sports and activities at the Ardmore Public Schools.

15. After receiving a medical release, A. N. participated in one or more softball games and performed cheerleading as Team Captain at the first home football game of the 2021 season.

16. Thereafter, and without cause or reason other than A. N.'s protected disability to her elbow and with ***deliberate indifference***, the Middle School Principal, Cindy Hudleston, intentionally and abruptly ousted and removed A. N. from both the girls softball team and from the cheerleading squad.

17. A. N. has been devastated by losing her position on the cheerleading squad and the softball team, both of which she has worked so hard all of her life. She has suffered severe emotional distress, PTSD and has had to seek the treatment of a therapist.

18. Also, due to the School's dismissing her from the teams, A. N. switched to virtual learning because she no longer feels supported or affirmed by the School personnel who so cavalierly and with deliberate indifference and in toatl disregarded for her feelings terminated her from the teams based on her disability. Even so, A. N. met

the school's requirements to participate in school sponsored extra-curricular activities. The dismissal from Softball and Cheer has caused A. N. to lose the social contact that an in-person learning environment can provide.

## CLAIM ONE
## SECTION 504 OF REHABILITATION ACT

The allegations in paragraphs 1 - 18 are incorporated as if fully set forth herein.

19. Section 504 of the Rehabilitation Act provides in relevant part:

No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . .

20. Ardmore Public Schools is a public school that receives federal financial assistance, and is required to comply with the Act.

21. A. N. is an "otherwise qualified individual" under Section 504. Prior to her injury, she had been a Lead Hitter on the softball team and the Team Captain of the cheerleading squad. There can be no question that she was qualified to be on both teams.

22. A. N. is an individual with a disability as defined pursuant to Section 504.

23. Section 705(20)(B) of the Rehabilitation Act makes the definition of the term "disability" in 42 U.S.C. § 12102(1) of the Americans with Disabilities Act (hereinafter "ADA") applicable to the Rehabilitation Act. A disability is defined in 42 U.S.C. § 12102(1) as:

(A) a physical or mental impairment that substantially limits one or more major life activities of such individual;
(B) a record of such an impairment; or
(C) being regarded as having such an impairment (as described in paragraph

(3)).

24. A. N. was by definition disabled when Ardmore Public Schools terminated her from the teams under each of these definitions. A. N. actually had a physical impairment to her left arm that substantially limited one or more major life activities. She had a record at school of having such an impairment. Finally, A. N. was regarded by the School as having such an impairment when they terminated her from the softball team and the cheerleading squad.

25. "Major life activities" under paragraph (1) are defined as including but not being limited to:

> **caring for oneself, performing manual tasks**, seeing, hearing, eating, sleeping, walking, standing, **lifting**, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working. (emphasis added).

26. A. N. had two corrective surgeries on her left elbow. A. N. 's injury and surgeries substantially limited her ability to care for herself, to perform many manual tasks, and also substantially limited her ability to lift items. The limitation of full extension and flexion of A. N. 's left elbow and left arm qualifies her as having a physical disability under section 1(A).

27. Plaintiff is disabled under 42 U.S.C. § 12102(1) of the ADA, especially given the rules of construction that state the "definition of disability in this chapter shall be construed in favor of broad coverage of individuals under this chapter, to the maximum extent permitted by the terms of this chapter." § 12102(4).

28. In addition, A. N. was "regarded as" having such an impairment when the School intentionally terminated her from the softball team and/or the cheerleading squad, which are extracurricular activities covered by the ADA.

29. For the purposes of paragraph (1)(C):

An individual meets the requirement of "being regarded as having such an impairment" if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity. 42 U.S.C. § 12102(3)(A).

30. It is true that under paragraph (3)(B), paragraph (1)(C) "shall not apply to impairments that are transitory and minor. A transitory impairment is an impairment with an actual or expected duration of 6 months or less." However, A. N. 's impairments were neither transitory nor minor. The impairments actually lasted more than 6 months. A. N. was injured on or about February 19, 2021 and was not released until after a period of over 6 months. In addition, the disability was not minor. The injury required two surgeries to repair her left elbow, and A. N. still has permanent disabilities to her arm.

31. Extracurricular activities such as cheerleading and softball are both protected activities under Section 504. 34 C.F.R. Part 104.37(1), specifies that schools "shall provide non-academic and extracurricular services and activities in such manner as is necessary to afford handicapped students an equal opportunity for participation in such services and activities." Such activities include physical recreational athletics,

recreational activities, special interest groups or clubs sponsored by the recipients. 34 C.F.R. Part 104.37(2).

32.     For these reasons stated above, A. N. was protected by Section 504 of the Rehabilitation Act. A. N. 's rights to participate in the extracurricular activities of softball and cheerleading were violated by the Ardmore School District when they removed her from both teams.

33.     As a result, A. N. has suffered emotional distress, PTSD and other damages. A. N. is entitled to a declaratory judgment that the conduct of Ardmore Public Schools were intentional discriminatory acts, which require a mandatory injunction requiring the school to allow her back on the teams, plus damages, and attorney's fees and costs incurred in bringing this action.

## CLAIM TWO
## AMERICANS WITH DISABILITIES ACT

The allegations of paragraphs 1 - 33 are incorporated as if fully set forth herein.

34.     Plaintiff has already set forth the requirements for defining a person as disabled under the Americans with Disability Act (ADA), because it is the same as the standard under Section 504 of the Rehabilitation Act. As stated previously, A. N. was disabled under the ADA due to her elbow injury when she was intentionally removed from the cheerleading squad and the softball teams.

35.     Title II of the ADA, 42 U.S.C. § 12132 provides as follows:

Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation

in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

36. A. N. was a qualified individual with a disability who was excluded from participation in activities at a public school, a covered entity under the ADA. She was terminated from the cheerleading squad and the softball team because of her disability, which violated the ADA.

37. As a result of the **intensional infliction of emotional distress**, A. N. has suffered PTSD and other damages. A. N. is entitled to a declaratory judgment that this treatment with indifference was an intentional discriminatory act, a mandatory injunction requiring the school to allow her back on the teams, damages, and attorney's fees and costs incurred in bringing this action.

## CLAIM THREE
## OKLAHOMA GOVERNMENTAL TORT CLAIMS ACT

The allegations of paragraphs 1 - 37 are incorporated as if fully set forth herein.

38. A. N. was injured on or about February 19, 2021 during a school authorized and coached extracurricular activity, while under the direct supervision of the Defendant's cheerleading Coach, Brittany Martinez. This extracurricular activity was not on school property, but was school sanctioned and supervised.

39. The injuries caused severe disability to A. N. 's left elbow, requiring her to have two surgeries. A. N. has lasting permanent disability to her left elbow.

40. Ardmore Public Schools, through Coach Martinez, had a duty to properly supervise and train the performance of the cheerleading stunt that injured A. N. .

41. Ardmore Public Schools failed both of these duties because Coach Martinez failed to properly train studebts and failed to adequately supervise the students participating in the stunt so as to prevent A. N. 's injury. In addition, the Coach failed to properly train the other cheerleaders to perform the stunt so that they would not drop A. N. .

42. These breaches directly caused A. N. 's injuries and caused her extensive damages.

43. In the Oklahoma Governmental Tort Claims Act (hereinafter "OGTCA"), 51 O.S. § 152.1(A), the State of Oklahoma adopted exceptions from the doctrine of sovereign immunity and stated: "The state, its political subdivisions, and all of their employees acting within the scope of their employment, whether performing governmental or proprietary functions, shall be immune from liability for torts." However, in section (B), the statute provides: "The state, only to the extent and in the manner provided in this act, waives its immunity and that of its political subdivisions..."

44. Section 153(A) provides:

> The state or a political subdivision shall be liable for loss resulting from its torts or the torts of its employees acting within the scope of their employment subject to the limitations and exceptions specified in The Governmental Tort Claims Act and only where the state or political subdivision, if a private person or entity, would bssse liable for money damages under the laws of this state. The state or a political subdivision shall not be liable under the provisions of The Governmental Tort Claims Act for any act or omission of an employee acting outside the scope of the employee's employment.

45. Upon information and belief, Coach Martinez was acting within the scope

of her employment when coaching the cheerleading practice during which A. N. was injured.

46. No exemptions from immunity apply to A. N. 's extracurricular activity of cheerleading. A. N. met the hourly activity requirement during remote learning.

## COMPLIANCE WITH THE OKLAHOMA GOVERNMENTAL TORT CLAIMS ACT
*[Title 51 Oklahoma Statutes § 151 et seq.]*

47. A. N. submitted the required Notice of Claim within one year on October 25, 2021 via certified mail to Ardmore Public Schools.[1]

48. The claim was deemed denied 90 days later on January 25, 2021 because the Defendant did not respond.[2]

49. This case has been commenced within 180 days from the denial of the claim.[3]

50. A. N. is entitled to full damages under the OGTCA for her injuries, medical treatment, pain and suffering (past and future), PTSD, emotional distress and permanent disability to her elbow.

**WHEREFORE**, premises considered, Plaintiff prays for declaratory judgment, injunctive relief and damages as follows:

---

[1]  [51 O.S. § 157(A).....(E)]

[2]  [51 O.S. § 156, (C).]

[3]  [51 O.S. § 157, (B).]

## REQUESTED RELIEF

a. Declaratory Judgment that A. N. was intentionally, unlawfully and discimatorily terminated from both the softball team and the cheerleading squad.

b. Affirmative Injunction requiring Ardmore Public Schools to reinstate A. N. to her former positions on both the softball team and the cheerleading squad.

c. Damages for medical bills, pain, suffering and permanent disability in the maximum amount allowed under the OGTCA for A. N. 's injuries caused by her fall.

d. Damages for intentional emotional distress and PTSD under the ADA.

e. An award of attorney's fees and costs under the ADA, and such further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby makes demand for trial by jury. Attorney's lien is claimed.

Dated this 18th day of May, 2022.

Respectfully Submitted,

/s/ James A. Conrady

James A. Conrady, OBA # 1853
CONRADY LAW, PLLC
2203 South Western Road
Stillwater OK 74074
Phone: (832) 330-5620
Email: jconrady@hotmail.com
ATTORNEY FOR PLAINTIFF